# Robert J. Brent and Outerbridge Horsey, *vs.* Thomas Davis and John Ferry.

In an action for *money had and received* there can be no recovery, unless it be shown that the money was actually received by the defendant or his agent.

Where a law partnership is limited to the transaction of professional business in the city of Baltimore, and a party, *with knowledge of this fact,* places in the hands of *one* of the partners a *note* for collection in Carroll county, and takes a receipt therefor from him in the firm name, there is no *joint* responsibility unless the other partner assented or was privy to the transaction.

But if the other partner was privy to or assented to the transaction, and the firm sent the note to an attorney in Carroll county as their agent, for collection, and such agent received the money on the note and failed to account for it, then the firm is responsible to the owner of the note.

APPEAL from the Superior Court of Baltimore city.

*Assumpsit* by the appellees, as partners in trade, against the appellants, to recover the amount of a judgment obtained on a promissory note placed in the hands of defendants, as attorneys at law, for collection. Plea, *non assumpsit.*

28    v.9

A bill of discovery was filed by the defendants and answered by the plaintiffs, and leave granted to take the testimony of Neale under a commission *de bene esse,* but neither the answers nor the deposition, if taken, were used at the trial.

*Exception.* The plaintiffs offered in evidence the receipt set out in the opinion of this court, signed by Horsey in the firm name, and proved that at its date defendants were associated in the practice of law in Baltimore city, where they had an office, and where also plaintiffs resided. They then offered the record of the judgment on the note referred to in the receipt against Kelly in Carroll county court. This record shows that the suit was brought on the 29th of March 1845, and the declaration filed by T. P. Scott, as the plaintiffs' attorney; that Abner Neale subsequently appeared with said Scott as plaintiffs' attorney; that the judgment was rendered on the 6th of April 1846, and, on the 5th of April 1847, was ordered to be entered satisfied by said Neale as plaintiffs' attorney. Defendants admitted they had notice of demand made on them for the money claimed in this case before suit brought, and plaintiffs here rested their case.

The defendants then offered the following notice of co-partnership, published in "The American," a newspaper of Baltimore city, of which Ferry, one of the plaintiffs, was at the time a subscriber, and which he daily received:

*" Law Notice.*

The undersigned have associated themselves together for the prosecution of their profession in the city of Baltimore, and will faithfully attend to any business confided to their charge. Robert J. Brent will continue, as heretofore, to attend the courts of Howard District, Charles county, Washington city, Alexandria, and the Supreme Court of the United States.

OUTERBRIDGE HORSEY.

ROBT. J. BRENT,

*Office No.* 14 *Law Buildings, and St. Paul street.*"

They further proved by a number of witnesses, members of the Baltimore bar, that it was their usage and practice to take charge of claims to be collected in the counties where they did not practice, and sometimes to receipt for such claims; that in

such cases it was their usage and practice to send such claims to some suitable and competent attorney practicing in the county where the debtor resided, and sometimes to put into the receipt to whom sent; that there was a diversity in the practice of witnesses, some of them charging commissions on the amount of the claim when received from the county attorney, and others not; that most of them informed their clients in such cases that they did not practice in such county, and would send the claim to some attorney practicing there, and some of them somtimes merely gave the name of an attorney, that the creditor might send his claim to him.

They further proved that neither of them ever was a member of the bar of Carroll county, or ever attended the court of that county, and that said Neale, at the date of his appearance to said suit, and ordering the judgment to be entered satisfied, was an attorney practicing in that court, of good reputation as a competent and upright attorney.

The plaintiffs then offered the following prayer :

If the jury find from the evidence that defendants received from the plaintiffs the note mentioned in the receipt, and that the money due thereon was subsequently paid by the maker on a judgment recovered against him in Carroll county court, as shown by the record thereof; that Neale, who received the money, was the agent of defendants, and that before this suit demand was made on defendants for payment of the money so received, then plaintiffs are entitled to recover.

The defendants then offered the following prayers :

1st. That there is no evidence of any authority given by defendants to Neale to appear as attorney on record for the plaintiffs in the suit in Carroll county, or to charge the defendants by reason of the receipt of the money by said Neale.

2nd. If the jury find that the co-partnership between defendants did not extend to the collection of claims in Carroll county, and that the plaintiffs knew this fact, then there is no joint legal liability on the defendants for the collection of this claim, though the receipt was signed by Horsey in the partnership name, unless there is evidence in the case to satisfy the jury that Brent was privy and assenting to such use of that name.

3rd. That the appearance of Neale constituted him the lawful attorney of the plaintiffs in that suit jointly with T. P. Scott, and, as such attorney, he was entitled to receive the money recovered by the judgment, and is responsible to the plaintiffs therefor, and they cannot recover in this suit.

4th. If the jury find from the evidence that defendants placed the note in the hands of Neale, an attorney of Carroll county court, for collection, and used ordinary care, diligence and prudence in selecting said Neale as a competent and faithful attorney, then the plaintiffs cannot recover for any default of Neale.

5th. If the jury believe from the evidence that the note was placed by the plaintiffs in the hands of defendants to be collected as stated in the receipt, that defendants were not members of the bar of Carroll county and did not practice law therein, and that this last fact was known to the plaintiffs at the time, and that when claims for collection or suit are placed in the hands of attorneys residing in Baltimore city, against persons residing in any county where such attorneys do not practice their profession, it is the usage of the profession, or members of the bar in said city, to forward such claims to members of the bar who practice in the courts of the county where the suits must be brought, and that defendants, acting upon such usage, forwarded the note to Neale, an attorney in Carroll county, to be collected, and that in selecting Neale for this purpose, they exercised ordinary care, prudence and diligence, and selected an attorney of established character for integrity, fidelity, and competency in his profession for the discharge of the duty so confided to him, then the plaintiffs cannot recover in this action.

6th. That in order to entitle the plaintiffs to recover in this case, it is incumbent on them to satisfy the jury, by evidence in the cause, that Neale was employed by defendants, or one of them, as attorney to prosecute and collect the claim, and that there is no such evidence in this case, and plaintiffs are, therefore, not entitled to recover.

The court, (FRICK, J.,) granted the plaintiffs' prayer, and rejected all those of the defendants. To this ruling the de-

fendants excepted, and the verdict and judgment being against them, appealed.

The cause was argued before Le Grand, C. J., Eccleston and Tuck, J.

*Henry May* and *St. Geo. W. Teackle* for the appellants, argued, that the prayer of the appellees was erroneously granted:

1st. Because it assumes there was evidence to show the note receipted for was the *joint* property of the plaintiffs, whereas there was no such evidence. The receipt is simply of John Ferry, and there is no evidence of co-partnership between the appellees, or that the note originated in any partnership business. See the rule as stated in *2nd Greenlf. on Ev., sec.* 478.

2nd. It submits to the jury to find that Neale was the agent of the defendants, when there is no evidence to establish such agency, but, consistently with the record, he may, and is presumed to, have been authorised by the clients to appear in the cause. Even if the law should presume, (which we do not admit,) that Mr. Scott, the first attorney appearing, was the agent of the defendants, it will certainly not presume that every attorney who subsequently appears is also such agent. It would rather presume that the clients had retained additional counsel. (7 *H. & J.,* 275, *Henck vs. Todhunter.*) This is not an action on the case for negligence, but *assumpsit* for money had and received by the defendants, and in such a case the *onus* is on the plaintiffs to show the agency of Neale, as the proof is that he received the money, and not the defendants. The question is simply, whether the jury can, upon no other evidence than the face of the Carroll county record, find that Neale was the agent of the defendants? That the agency must be proved in some way, see 2 *Esp.,* 509, *Matthews vs. Haydon.* 2 *Saund. on Pl. & Ev.,* 672. 11 *Mod.,* 88, *Thorold vs. Smith.*

3rd. This prayer precludes the jury from considering the evidence of notice to the appellants of the fact that defendants' copartnership did not extend to Carroll county, and, therefore, that Mr. Horsey had no legal authority to bind his co-partner

by any such receipt.   It is proved that prior to the date of the receipt Ferry was a subscriber to " The American" newspaper, and is, therefore, chargeable with notice of defendants' advertisement in that paper.   *Story on Part.*, sec. 161.   1 *Starkie on Ev.*, 166.   1 *Starkie's Rep.*, 186, *Leeson vs. Holt. Peake's N. P.*, 42, *Gorham vs. Thompson.   Ibid.*, 154, *Graham vs. Hope.*   Notice to one partner is notice to all.   *Story on Part.*, sec. 107.   Here there is evidence tending to show that the appellees, with full notice of the limited and local partnership between the appellants, took from *one* of the partners the receipt in a case not authorised by the terms of the co-partnership as known to Ferry, and there is no evidence whatever of the privity or assent of the other partner to this unauthorised transaction. In such a case the co-partnership cannot be held liable to the party so dealing with one of the firm.   13 *Penn. State Rep.*, 650, *Porter vs. Kelly.   Story on Part.*, secs. 110, 112, 128, 129, 130.   43 *Eng. C. L. Rep.*, 754.   3 *Ala. Rep.*, 187, *Huntington vs. Branch Bank.*

4th.  The prayer precludes all inquiry as to the effect of usage in reference to the practice of attorneys in Baltimore city, in selecting the county attorney in similar cases.   The defendants resided in Baltimore, and were not members of the bar of Carroll county.   There is no evidence that they specially undertook *personally* to prosecute this claim in Carroll county. The receipt simply states that the claim was "*to be collected.*" Now what are the duties of an attorney, and his obligation to his client?   Some of the cases intimate that a fee must be paid, or promised to make an attorney liable.   (3 *Bibb.*, 517, *Eccles vs. Stevenson.   2 Wash. (Va.) Rep.*, 203, *Stephens vs. White.*)   ·But we are willing to concede that the liability exists, though in an inferior degree, where, as in this case, no compensation is given or promised.   In such cases the agent is only liable for gross negligence.   (*Paley on Agency*, 77, 78.) The general rule is, that an attorney is only liable for ordinary care and diligence, and good faith.   (7 *Shepley*, 421, *Wilson vs. Russ.   4 Burr.*, 2060, *Pitt. vs. Yalden.   5 Call.*, 118, *Hawkins vs. Minor.*)   He must be diligent in the usual course of proceedings.   (*Wright*, 466, *Gallaher vs. Thompson.*)   In

this case the usage is clearly proved by a number of witnesses, who testify, that, as attorneys in Baltimore, it is their practice to send such claims to county attorneys for collection. In our view of it the proof shows that this usage is a well established local usage, and is sufficiently general and contemporaneous with the date of the receipt in March 1845, to be relied on before the jury as evidence by which to construe and expound the undertaking of the appellants; that in all these particulars it satisfies the decisions in 6 *H. & J.*, 408, *Allegre vs. Ins. Co.* 9 *G. & J.*, 220, *Powell vs. Bradlee.* 1 *H. & G.*, 239, *Bank of Columbia vs. Fitzhugh.* 2 *Md. Rep.*, 241, *Merchants Mutual Ins. Co. vs. Wilson.* 6 *Md. Rep.*, 48, *Foley & Woodside, vs. Mason.* See, also, 1 *Greenlf. on Ev.*, sec. 292. 2 *Sumner*, 567, *The Schooner Reeside.* 2 *Douglas*, 511, *Noble vs. Kennoway.* 1 *Camp.*, 503, *Vallance vs. Dewar.* But the case of *Jackson vs. The Union Bank*, 6 *H. & J.*, 149, is more strictly analogous to the present controversy than any yet cited. It was there held, that a party depositing in a Baltimore bank a draft payable in the District of Columbia, could not hold the Baltimore bank responsible for the laches of another bank in the District of Columbia, to which the draft had been sent according to the practice and usage of the Baltimore banks. The court in that case say, "the draft was payable in the District of Columbia, and the placing it with the defendants for collection, was equivalent to an agreement with them that it should be sent by them for that purpose to some bank in the District of Columbia."

*Orville Horwitz* and *John Nelson* for the appellees, argued:

1st. That the general proposition contained in the plaintiffs' prayer was correct, viz., that the money collected by Neale, the agent of the defendants, on the judgment, was in contemplation of law money collected by them, and that they are responsible for its payment to the owners and holders of the note on which the same was collected by them as attorneys. 2 *Blackf.*, 22, *Pollard vs. Rowland.* 12 *Smedes & Mar.*, 669, *Wilkinson vs. Griswold, et al.* 2 *Pike*, 413, *Cummins vs. McLain, et al.*

2nd. That defendants' first prayer is erroneous:—1st. The note is delivered to and receipted for by them; suit is brought on it, and for two years before payment of the money Neale appears as the attorney of record in Carroll county. From whom *must* he have got the note? How was the possession transferred from Brent and Horsey to Neale? Either by de-livery to act as *their* agent or by finding? In the first case they are clearly responsible; in the second case it was their duty to have watched the progress of the case during the *three* years it was on the docket in Carroll county, to have looked after the note committed to their charge, and to have interfered to protect the interest of their principals, if Neale was improp-erly of record. 2nd. Is not the fact of their failure to use the answers to the bill of discovery and the testimony of Neale before the court? and is it not competent to draw the inference from such failure, that if used they would have shown directly that Neale was their agent, and that he received the note from them?

3rd. There is no evidence to sustain the defendants' second prayer. The evidence consists of the advertisement, and its construction is for the court. The manifest interpretation of this *law notice* is, that defendants had fixed their place of business—their *office*—in *Baltimore* city, and that they will faithfully attend to *any* business confided to their charge, not to business within the city only, but to *any* business. Suppose the debtor Kelly had resided in *Baltimore county* instead of Carroll? The second sentence of this advertisement holds out the additional inducement, that one of the defendants will *himself* attend *in person* to business before certain courts *out of* the city, negativing the idea that their business is to be confined to the city, and presenting the inference, that, except at the places named, they will transact any business confided to their charge through their agents.

4th. It is admitted that so far as the *defendant to the suit in Carroll county is concerned,* Neale was the attorney of the plaintiffs, and they were bound by his acts, and cannot there-fore recover the money a second time from Kelly, (7 *H. & J.,* 275, *Henck vs. Todhunter,*) but as between plaintiffs and

defendants the former have nothing to do with Neale. He is to them in that regard a stranger without privity, upon the familiar principle, *Delegatus non potest delegare*. 4 *Pet.*, 396. 4 *Miss.*, 522. An attorney is selected because of the confidence of the principal in his ability, integrity and responsibility, and the principal cannot be turned over to a sub-agent, where there is a breach of duty or a want of responsibility. 26 *Wend.*, 485, *Lyon vs. Jerome*. The defendants' third prayer was therefore erroneous.

5th. That the duty undertaken by the defendants was not to select for the plaintiffs, with due care and diligence, a competent and faithful attorney of Carroll county, but to collect the money from Kelly, (3 *Penn. Rep.*, 224, *Riddle vs. Poorman, et al.*,) and their fourth prayer was therefore incorrect.

6th. As to the fifth prayer we insist:—1st. That there is no evidence of any knowledge on the part of the plaintiffs that defendants were not members of the bar of Carroll county, and did not practice law there. The most that can be contended is, that there was knowledge, inferentially, that Brent did not in person attend regularly that court. 2nd. There is no evidence of any usage of any description. There is evidence of a diversity of practice among members of the bar as to the collection of claims out of the city. Some take such claims and some do not; some receipt for them and some do not; some send the claims to an attorney and some give the name of the attorney to the client; some charge commissions and some do not; some state to their client that they do not practice in the particular court and some do not. "In any case a usage to be admissible must be proved to be *known to the parties*, or be so general and well established that *knowledge* and *adoption* of it may be *presumed*, and it *must* be certain and uniform." (6 *Md. Rep.*, 50, *Foley & Woodside, vs. Mason.*) Is there in this case any proof of certainty and uniformity? or that such usage was known to the plaintiffs? or that it was so general and well established, that knowledge and adoption might be presumed? Again, there can be no usage admissible in evidence to vary the terms of the contract

29      v.9

where they are clear and manifest, (6 *Md. Rep.*, 49,) and the undertaking by the receipt in this case is clear and manifest.

7th. As to the sixth prayer we insist:—1st. It is not incumbent on the plaintiffs to prove, by direct evidence, that Neale was employed by the defendants. It having been shown by the receipt that the note was placed in their hands for collection, the *onus* of showing that their agency was revoked, and that the note came to the hands of another party by the intervention of the plaintiffs, is on the defendants. 2nd. As before stated, the inference is irresistible that Neale must have received the note from defendants, there being no evidence to show that it ever was in the hands of any other person after it was delivered to them for collection.

LE GRAND, C. J., delivered the opinion of this court.

This action was brought to recover the amount of a judgment obtained on a promissory note, payable to the appellees by a certain Thomas G. Kelly, of Carroll county. The facts of the case, as shown at the trial below, may be thus stated:— The appellants were associated in copartnership, (as was proven by an advertisement to that effect in one of the newspapers published in the city of Baltimore,) for the conducting of their business in *the city of Baltimore* as lawyers; that the appellee, Ferry, placed in the hands of the appellant, Horsey, the promissory note of Kelly, and the said Horsey gave him therefor the following receipt:

"*March 27th,* 1845.

Received of John Ferry, Esq., a note of Thomas G. Kelly, of Carroll county, dated 31st December 1842, for $350, one day after date—to be collected.          BRENT & HORSEY."

On the note so handed to Mr. Horsey suit was brought against the maker, and judgment obtained on the same in Carroll county court. The suit was brought by T. Parkin Scott, Esq., as the attorney of the payees. Subsequently, Abner Neale, Esq., appeared as their counsel. The money was obtained on the judgment, but never paid over to either the appellants or appellees in this case. This suit is brought on the theory, that the appellants having received the note for

*collection,* are bound, in law, for the amount received by Neale. This is denied on various grounds:—First, that Horsey had no power to bind his partner to do any professional business beyond the limits of the city of Baltimore. Second, that inasmuch as neither of the appellants practiced their profession in Carroll county, the reception of the note for collection only implied, on their part, an obligation to exercise due diligence in the selection of some attorney of that county who was generally esteemed and regarded as trustworthy and competent; and Thirdly, that it is the custom among the members of the profession in the city of Baltimore, when they do not practice in a particular county, or court, to transmit to an attorney who does so, any paper given to them for collection, and that such reception and transmission is not understood as subjecting them to any liability for the conduct of the person selected to prosecute the claim.

The appellants never received any fee or commission for their agency in the transaction. It was also proven that the appellee Ferry was a subscriber to and daily received the newspaper, the "Baltimore American," at the time the notice of the co-partnership between the appellants appeared in it as an advertisement.

On this state of facts the appellees submitted to the court below one prayer, which was granted; and the appellants six, which were all rejected. From this decision this appeal is taken.

We think the court erred in granting the prayer of the plaintiff, and in rejecting the first, second and sixth prayers of the defendants.

This is not an action for negligence, but for money had and received, and there can be no recovery, unless it be shown that the defendants actually received it themselves, or that their agent did so. The prayer of the plaintiff concedes this by requiring the jury to find that Abner Neale was the agent of the defendants. The defect in the prayer is, that there is no evidence from which the jury could find such agency. There is not the slightest evidence in the record to show how, or by what authority he became associated with the case in

Carroll county court. The suit was brought by T. Parkin Scott, Esq., and if any inference is to be drawn of the creation of an agency by the defendants, from the fact that the note was handed to one of them, and therefore to be accounted for, it would be that Mr. Scott, and not Mr. Neale, was the agent selected.

The first and sixth prayers of the defendants are but the converse of the proposition contained in the plaintiffs', and ought to have been granted.

The second prayer of the defendants ought also to have been granted. It merely asserts, that if the partnership of the defendants was limited to the transaction of professional business within the limits of the city of Baltimore, and that the plaintiffs *"were apprised of this fact,"* then there is no *joint* responsibility, unless the defendant Brent assented or was privy to the transaction. Had this prayer been granted, the jury might have found all the facts therein required to be found by the jury. The fifth prayer of the defendants was properly rejected. The evidence relied upon to sustain the usage we regard as insufficient. For the views of this court on the subject of usage, see *Foley & Woodside, vs. Mason & Son*, 6 *Md. Rep.*, 49, 50. We abstain from an expression of opinion in regard to the other propositions, inasmuch as we regard them as mere abstractions in this case. The question here is, not whether Mr. Scott or Mr. Neale be responsible to the plaintiffs? but, whether the defendants are? It would be improper to decide on the responsibility of persons who are not parties before us.

Whilst we hold, that if the partnership was limited to the city of Baltimore, one partner had no right to bind his co-partner, without his consent, for matters not covered by the terms of their agreement, nevertheless, we hold it clear, that if there was privity or assent to a contract to do that not covered by the co-partnership, it binds all. If the jury should believe from the evidence that Mr. Horsey signed the receipt given in evidence, and that Mr. Brent ratified the act, and that Mr. Neale was their agent, and received the money and failed to account for it, then the defendants are responsible. That the

plaintiffs may have an opportunity to supply the proof of the agency of Mr. Neale, if they can do so, we send the case back.

*Judgment reversed and procedendo awarded.*